IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LEROY MCFADDEN,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | CV 15-82-M-DLC-JCL<br><br>FINDINGS & RECOMMENDATION |

Plaintiff Leroy McFadden brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. McFadden protectively filed his benefit application on April 2, 2012, alleging disability since October 31, 2011, due to "cervical, obesity, and depression" (AR 14). Following an administrative hearing, an ALJ judge denied McFadden's application. (AR 24). On July 7, 2015, McFadden filed the complaint in this matter seeking judicial review of the ALJ's decision. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

McFadden was 50 years old at the time of his alleged onset date, and 52

years old at the time of the ALJ's decision. (AR 34; 36).

I.      **Standard of Review**

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record."  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision."  *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court "may not substitute its judgment for that of the Commissioner."  *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the

severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

Following the steps in the sequential process, the ALJ first found that McFadden meets the insured status requirements of the Social Security Act through December 31, 2016. (AR 14). The ALJ determined that McFadden had not engaged in substantial gainful activity since his alleged onset date of October 31, 2011. (AR 14). Moving to step two, the ALJ found that McFadden had the following severe impairments: cervical, obesity, and depression. (AR 14). At step three, the ALJ determined that McFadden did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (AR 15). At step four, the ALJ found that McFadden had the residual capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b). The ALJ then determined that McFadden was capable of performing past relevant work. (AR 22). The ALJ made alternate

findings at step five, and further found there were other jobs in the national economy that McFadden was able to perform. Finally, the ALJ found that McFadden had not been under a disability, as defined by the Social Security Act from October 31, 2011, through the date of the ALJ's decision. (AR 23).

### A. Listed Impairments

McFadden argues the ALJ erred at step three by finding that he did not satisfy the criteria for presumptive disability under Listing 1.04 for disorders of the spine. At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).

To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the

relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

The ALJ considered whether McFadden's cervical disorder satisfied the criteria of Listing 1.04, but found that it did not. To meet those criteria, a claimant must present evidence of nerve root compression characterized by, among other things, (1) limitation of motion of the spine, (2) spinal arachnoiditis, or (3) lumbar spinal stenosis resulting in an inability to ambulate effectively. 20 C.F.R. pt 404, subpt. P, Appendix 1, § 1.04. The ALJ concluded that the medical evidence did not establish that any of these criteria were met. (AR 15).

McFadden argues that the ALJ's conclusion is inconsistent with the evidence in the record. (Doc. 12, p. 8). In particular, McFadden argues that an MRI dated August 9, 2012, and a CT scan dated February 4, 2013, show radiologic evidence of moderate spinal stenosis. (AR 472; 501). However, the record indicates that examining physician Dr. Frank Bishop reviewed this CT scan and MRI imaging data and found that neither showed significant evidence of spinal stenosis. (AR 497, 499). Furthermore, even if the evidence showed

McFadden suffered from spinal stenosis, the listing requires that the stenosis result in an inability to ambulate effectively. McFadden does not point to any evidence showing that his condition prevents him from ambulating effectively, and the Court sees none. Nor does McFadden point to any evidence that indicates he suffered from nerve root compression, which is also necessary for purposes of satisfying the requirements of Listing 1.04. The ALJ's step three determination is consistent with the opinions of state agency reviewing physicians Dr. William Fernandez and Dr. David Jordan, both of whom concluded that McFadden's impairments did not met the criteria of Listing 1.04. (AR 117, 130.). The Court finds that McFadden has not met his burden of showing that his impairments meet or are medically equal to a listed impairment. The Court thus concludes that the ALJ's step-three analysis is supported by substantial evidence and free of error.

### B. Credibility

McFadden next argues that there is insufficient evidence to support the ALJ's determination at step four that McFadden has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b). In particular, McFadden challenges the ALJ's adverse credibility determination. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citations omitted.) Where, as here, the ALJ finds the claimant has met this evidentiary threshold and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 P.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493 (*quoting Burnell v. Sullivan* 947 F.2d 341, 345–46 (9th Cir. 1991).

In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take general findings" by the ALJ "and comb the administrative record to find specific"

evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony he finds not credible, and linking "that testimony to the particular parts of the records supporting his non-credibility determination." *Brown-Hunter*, 806 F.3d at 494.

Here, the ALJ first found that McFadden's impairments could reasonably be expected to cause his alleged symptoms. However, the ALJ then found that McFadden's description of the "intensity, persistence and limiting effects of these symptoms" was "not entirely credible." (AR 18). The reasons the ALJ gave for his adverse credibility determination were (1) a lack of medical evidence supporting McFadden's allegations; and (2) inconsistencies between McFadden's allegations and his own testimony regarding his daily activities. (AR 17-20). When the relevant medical evidence fails to support a claimant's allegations, an ALJ may reject a claimant's subjective testimony. *Tonapetyan v Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Furthermore, when an ALJ finds inconsistencies between the claimant's described limitations and the activities of daily living performed by the claimant, the ALJ may discredit a claimant's subjective complaints. *Thomas*, 278 F.3d at 958-959.

As to the ALJ's finding that the medical evidence did not support McFadden's allegations, McFadden argues the ALJ did not point to any specific

conflict between the medical evidence and McFadden's testimony. This is incorrect. The record indicates the ALJ considered McFadden's alleged limitations and then found specific examination results and findings that did not support McFadden's testimony regarding the severity of his complaints. (AR 18-20). For example, McFadden testified he experiences weakness and numbness in his hands, which results in him dropping things and that he has difficulty lifting, reaching, walking, and stair climbing. As the ALJ noted, however, three separate medical examinations showed McFadden had normal strength, reflexes, and no sustained clonus in his upper or lower extremities. (AR 356-57; 496-97). The ALJ also found the medical evidence concerning McFadden's mental impairments did not support McFadden's allegations. (AR 20). McFadden testified that he had trouble concentrating and remembering things. (AR 58). However, the ALJ noted that McFadden was administered the Wechsler Memory Scale IV, and scored in the average to superior range. (AR 452-458). Likewise, the ALJ pointed to records from a Functional Capacity Assessment which contained several findings that were inconsistent with maximum effort. (AR 20; 611-612). Substantial evidence thus supports the ALJ's determination that the medical evidence does not support McFadden's allegations regarding the severity of his impairments and extent of his limitations.

McFadden also argues that the ALJ's finding that McFadden's testimony regarding his limitations contradicts his own testimony regarding his daily activities cannot support an adverse credibility determination because the ALJ failed to show that the activities are transferable to a work setting. This is also incorrect. The Ninth Circuit recognizes two situations where a claimant's daily activities may support an adverse credibility determination: (1) the activities are transferrable to a work setting, or (2) the activities contradict other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, McFadden alleged that he has weakness and numbness in his hands which causes him to drop things, cannot sit for more than 15 to 20 minutes, gets tired from standing, and cannot remember things or concentrate. However, the ALJ noted McFadden not only takes care of his children, pets, and his own personal care but also prepares meals, pays his bills, manages both a checking and savings account, uses a computer, and is capable of driving up to 75 miles. The ALJ did not find that these activities were transferrable to a work setting. Rather, he reasonably found that McFadden's allegations concerning his limitations were contradicted by the performance of these daily activities.

In sum, the Court is satisfied that the ALJ provided sufficiently clear and convincing reasons for finding McFadden's subjective testimony not entirely

credible.

### C. Medical Opinions

McFadden argues the ALJ erred by rejecting the opinion of his treating physician Dr. Greg Vanichkachorn and the opinion of examining psychologist, Dr. David Mahoney in determining McFadden's residual functional capacity.

To reject the controverted opinion of a treating physician, the ALJ must provide" 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Similar standards apply to examining physicians. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

### 1. Dr. Greg Vanichkachorn

Dr. Vanichkachorn began treating McFadden for chronic neck pain in April of 2012, approximately eight months after McFadden claims he became disabled. McFadden reported sharp pain in the neck, shoulder, and between the shoulders. McFadden also reported tingling and numbness in the right forearm, and decreased grip strength bilaterally. (AR 492). Dr. Vanichkachorn prescribed Glyburide,

Humalog, Simvastatin, Lisinopril, and Norco to help treat McFadden's symptoms. McFadden returned to Dr. Vanichkachorn several times over the subsequent months complaining of continuing pain, numbness in his hands, and insomnia. (AR 460-495).

On September 18, 2012, Dr. Vanichkachorn wrote a letter in support of McFadden's disability application. (AR 460). Dr. Vanichkachorn stated McFadden "suffers from significant musculoskeletal conditions that impair his ability to work fully." *Id.* In August 2013, Dr. Vanichkachorn completed a Medical Status Form on which he indicated that while McFadden could never climb ladders or lift anything over ten pounds, he could occasionally reach, bend, kneel, and squat, and frequently lift items weighing less than ten pounds. (AR 563). Dr. Vanichkachorn indicated McFadden could only work for two hours per day, five days a week. (AR 566). McFadden argues the ALJ erred by not giving Dr. Vanichkachorn's opinions more weight.

The ALJ acknowledged Dr. Vanichkachorn's opinions, but rejected them for specific and legitimate reasons. Most importantly, the ALJ found that Dr. Vanichkachorn's opinions regarding the severity of McFadden's limitations were not consistent with the record as a whole. (AR 21). This is a fair statement.

Despite Dr. Vanichkachorn's assessment of McFadden's limitations, an

examination by Dr. Frank Bishop in February 2013, indicated McFadden had "normal strength throughout his upper extremities," and "full strength , normal reflexes, intact sensation, no clonus in the lower extremities," and normal gait. A cervical CT myelogram also indicated "appropriate screw placement and anterior plating without significant evidence of spinal or neural foraminal stenosis, malalignment, or instability." (AR 497). Furthermore, during a functional capacity evaluation, McFadden exhibited behaviors inconsistent with his described pain rating, including "ambulating with normal speed and motion," "joking with staff members during his walking activity," and "improvement in his waist and overhead lifting." (AR 612).  Also, medical records from early 2012 describe "significant improvement" in McFadden's reported pain and "normal strength." (AR 356-358). Finally, the ALJ correctly noted that Dr. Vanichkachorn's statements regarding McFadden's ability to work fully constituted ". . . administrative findings dispositive of a case and requiring familiarity with the Regulations and legal standards," and thus were not medical opinions. 20 C.F.R. § 404.1527(d).

    **2.**    **Dr. David Mahoney**

Dr. Mahoney performed a mental status evaluation of McFadden on July 11, 2012. Dr. Mahoney concluded that McFadden had a depressive disorder and that

his "anxiety confuses him and affects his intellectual performance." (AR 458).

The ALJ gave little weight to Dr. Mahoney's opinion for two reasons. First, Dr. Mahoney failed to express his opinion in a "function-by-function" manner because he failed to address specific limitations and their impact on McFadden's ability to function or work. (AR 20). Second, the ALJ noted that neither the record as a whole nor Dr. Mahoney's own objective findings supported his conclusions. Although Dr. Mahoney concluded that McFadden had a depressive disorder and that his "anxiety confuses him and affects his intellectual performance," the same report indicates McFadden arrived on time for his appointment, was well-groomed, and provided "continual attention and focus" for the entirety of the interview. (AR 451). Dr. Mahoney's report also indicates that McFadden maintained normal eye contact during conversations and was cooperative and that McFadden's intelligence was average and his cognitive abilities normal.

The ALJ permissibly discounted both Dr. Vanichkachorn's and Dr. Mahoney's opinions for the specific and legitimate reasons set forth above and instead credited other substantial evidence in the record as a whole to determine McFadden's ability to function.

### D.     Lay Testimony

McFadden argues the ALJ failed to provide germane reasons for rejecting

his wife's lay witness statements when determining McFadden's residual functional capacity.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). One such germane reason is when the lay witness's testimony is inconsistent with the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir 2011) (*citing to Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Additionally, when a lay witness's testimony is similar to a claimant's, the ALJ may reject the witness's testimony for the same reasons used to reject the claimant's testimony. *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009).

McFadden's wife, Mitzi McFadden, testified at his hearing. The ALJ noted that her statements were "generally supportive" of McFadden's allegations. However, the ALJ noted that like McFadden's testimony, his wife's statements were inconsistent with the record as a whole. (AR 21). Like McFadden, Mitzi

McFadden testified that her husband has trouble using his hands, sitting or standing for long periods of time, and has trouble remembering things. (AR 81-86). Given the similarity of Mitzi McFadden's statements to those of her husband and the inconsistencies between those statements and the record as a whole as noted above, the court finds the ALJ provided germane reasons for discounting the lay witness testimony in this case.

For the foregoing reasons, the court finds there is sufficient evidence to support the ALJ's determination at step four that McFadden has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b).

### E. Other Work

McFadden next argues the ALJ erred by finding he had the residual functional capacity to perform past relevant work as a dispatcher, dispatcher supervisor, or process server. However, as noted above, the ALJ also made an alternative finding in step five that there are other jobs in the national economy that McFadden can perform. Because the alternative findings are dispositive, the court begins there.

In order to support a finding at step five that a claimant is not disabled, the Commissioner must provide evidence that other work exists in significant numbers

in the national economy that the claimant is able to do given his residual functional capacity and vocational factors. 20 C.F.R. § 404.1560(b)(2). An ALJ may rely on a vocational expert to provide this evidence. If the ALJ chooses to rely upon a vocational expert, the ALJ must propose a hypothetical question based upon the claimant's limitations that are supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-1163(9th Cir. 2001). However, the hypothetical question posed by the ALJ need only include the limitations the ALJ found credible. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Here, the ALJ posed a hypothetical question to a vocational expert that incorporated Mcfadden's age, education, prior work, and the limitations the ALJ found credible. (AR 105). The expert answered the hypothetical by stating there were two different jobs in the national economy that McFadden could perform light level work as a bench assembler, with 116,000 jobs in the national economy, and light level work as a parking lot attendant, with 34,000 jobs in the national economy.

McFadden argues the residual functional capacity used as the basis for the hypothetical question failed to properly account for McFadden's actual limitations. However, as noted above, there was substantial evidence to support the ALJ's determination of McFadden's residual functional capacity. Therefore,

because the ALJ posed a hypothetical question to the vocational expert that incorporated a well-supported residual functional capacity, the expert's testimony is adequate evidence to support the ALJ's findings at step five. Accordingly, the court finds the Commissioner has met her burden of showing the existence of work in significant numbers in the national economy that McFadden could perform.

IV. **Conclusion**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that McFadden's motion for summary judgment be DENIED and the Commissioner's decision be affirmed.

DATED this 8th day of July, 2016

Jeremiah C. Lynch
United States Magistrate Judge